**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **PAMELA BANKS,**<br><br>      **Plaintiff,**<br><br> v.<br><br>**ST. FRANCIS HEALTH CENTER, INC.,**<br><br>      **Defendant.** | Case No. 15-CV-2602-JAR |

## MEMORANDUM AND ORDER

Plaintiff Pamela Banks brings this action against St. Francis Health Center, Inc. ("St. Francis"), alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 and 42 U.S.C. § 1981, retaliation in violation of Title VII and 42 U.S.C. § 1981, and interference with contractual relations in violation of 42 U.S.C. § 1981. Defendant St. Francis filed a Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 24) and an accompanying memorandum of law (Doc. 25). Defendant argues that Plaintiff's Second Amended Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) because it fails to sufficiently allege that St. Francis was her employer for Title VII or § 1981 purposes. It also argues that Plaintiff has failed to allege that she suffered the loss of a contractual relationship. For the reasons below, the Court grants in part and denies in part Defendant's Motion to Dismiss.

### I.     Factual Background

The following facts are drawn from Plaintiff's Second Amended Complaint; the well-pleaded facts alleged therein are assumed to be true, as required on a motion to dismiss under Fed. R. Civ. P. 12(b)(6).[1]  Plaintiff Pamela Banks worked as a patient advocate at St. Francis from January 2012 to July 2014. A company called Conifer was involved in Plaintiff's

---

[1] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

placement at St. Francis, but she interviewed at St. Francis for the patient advocate position and attended an employee orientation training conducted by St. Francis.  Plaintiff was provided with a St. Francis photo identification badge, and was required to follow hospital rules and regulations, including adhering to St. Francis's dress code.  Plaintiff was supervised by the St. Francis Director of Patient Accounts, Barbara Shields, who gave Plaintiff her work assignments, appraised Plaintiff's work on a weekly basis, set Plaintiff's work schedule, and disciplined Plaintiff.  Plaintiff was required to obtain approval from St. Francis if she wanted to work part-time elsewhere.  Her work supplies, email account, and work space were provided by St. Francis.

Plaintiff is African American; St. Francis has few African American employees, and all of the social workers with whom Plaintiff worked at St. Francis were Caucasian.  The hospital social workers were condescending to Plaintiff; they slammed materials down on desks rather than handing them to Plaintiff.  Plaintiff's co-workers used racial slurs toward her and made racially inappropriate comments.  For example, Plaintiff was regularly referred to as the "black gal" or "black girl" instead of by name; a social worker called her an "uppity nigger"; another employee called her "Black Oprah of St. Francis."  A co-worker showed Plaintiff a picture of her husband's car, in the background of which hung a Confederate flag.  On two occasions, Plaintiff's office was broken into and on one of those occasions her belongings were taken.  She was moved to a new office in 2013, which she shared with another African American employee, and which was a converted storage closet without windows, heating, or air conditioning.  Plaintiff's supervisor falsely reported that Plaintiff had disclosed confidential patient information and threatened to file charges against her.  In another instance, a co-worker falsely stated in a medical record that Plaintiff had visited a patient she had never seen, and refused to correct the record.  Plaintiff found four nails in the tire of her vehicle while it was parked at St. Francis.

Plaintiff's African American co-worker, Ms. Clark, received an email from another employee, comparing Ms. Clark's scarf to a dog's leash and saying that Ms. Clark would be a cute labradoodle.

Plaintiff reported the racist behavior to Conifer multiple times, including in a written complaint in March 2014. A human resources employee from Conifer visited St. Francis. A St. Francis human resources manager determined that Plaintiff's complaints were meritless. In July 2014, Conifer removed Plaintiff from St. Francis.

## II.     Rule 12(b)(6) Standard

To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level."[2] The allegations must be enough that the plaintiff plausibly has a claim for relief.[3] The plausibility standard does not require a showing of probability that a defendant has acted unlawfully, but requires more than "a sheer possibility."[4] As the Supreme Court has explained, "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[5] Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[6]

## III.    Discussion

---

[2] *Twombly*, 550 U.S. at 555.

[3] *Robbins v. Oklahoma*, 519 F.3d 1242, 1247–48 (10th Cir. 2008).

[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[5] *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).

[6] *Id.*

3

Defendant argues in its Motion to Dismiss that Plaintiff has failed to sufficiently allege that St. Francis was her employer, and contends that the only claims Plaintiff makes that would allege an employment relationship are conclusory and lack a factual basis. Defendant further argues that Plaintiff fails to allege that she experienced an impaired contractual relationship as a result of the actions by St. Francis employees.

### a. Race Discrimination Claims

In Count One of her Second Amended Complaint, Plaintiff alleges that the environment at St. Francis was racially hostile and she claims that she suffered race discrimination as a result of her co-workers' use of racial slurs, racially offensive language, and other mistreatment towards her. Plaintiff alleges that this discrimination and harassment by St. Francis violated Title VII and § 1981. Defendant argues in its motion to dismiss that Plaintiff has not alleged an employment relationship with St. Francis, and under the joint employer test the Court should find that St. Francis was not Plaintiff's employer.

As a threshold matter, Plaintiff first argues in opposition that Defendant's motion is moot because the Court has already denied Defendant's previous motion to dismiss Plaintiff's First Amended Complaint, and has decided that Plaintiff's allegations about her employment relationship with St. Francis are sufficient. This is not accurate. The Court made no substantive ruling on Defendant's previous motion to dismiss, nor has the Court previously assessed the sufficiency of Plaintiff's claims. Rather, the Court found that motion was moot because Plaintiff filed her Second Amended Complaint before the Court had an opportunity to decide that motion.[7] A finding that a defendant's motion to dismiss is moot is in no way the equivalent of a favorable ruling for the Plaintiff. The issues raised in Defendant's present motion to dismiss are not moot, have not yet been ruled upon, and are now ripe for a ruling by this Court.

---

[7] Doc. 26.

Plaintiff argues that the allegations in her Second Amended Complaint sufficiently establish that St. Francis was her employer, but that the Court should assess the factors suggested by the Equal Employment Opportunity Commission ("EEOC") rather than the joint employer test suggested by Defendant. The EEOC test considers sixteen factors in the joint employment context, and is a broader assessment than the joint employer test.

To establish a prima facie case under Title VII, a plaintiff must first prove the defendant was her employer.[8] Depending on the situation, the Tenth Circuit has approved various tests to determine whether a defendant is an employer for the purposes of Title VII and § 1981.[9] The Tenth Circuit has ruled that the joint employer test is proper where "an employee of one entity seeks to hold another entity liable as an employer."[10] In other words, "a plaintiff who is the employee of one entity may seek to hold another entity liable by claiming that the two entities are joint employers. This joint-employer test acknowledges that the two entities are separate, but looks to whether they co-determine the essential terms and conditions of employment."[11] "Both entities are employers if they both 'exercise significant control over the same employees.'"[12]

Plaintiff conclusively states in her Second Amended Complaint that Conifer and St. Francis were her joint employers. The factual situation she presents in her Second Amended Complaint is the type of scenario contemplated by the joint employer test as it has been framed by the Tenth Circuit. There is no support in Tenth Circuit case law for Plaintiff's contention that

---

[8] *Lockard v. Pizza Hut, Inc.,* 162 F.3d 1062, 1069 (10th Cir. 1998); *Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1361 (10th Cir. 1993); *see also Knitter v. Corvias Military Living, LLC*, 758 F.3d 1214, 1225 (10th Cir. 2014).

[9] *Knitter*, 758 F.3d at 1225.

[10] *Id.* at 1226.

[11] *Bristol v. Bd. of Cnty. Comm'rs,* 312 F.3d 1213, 1218 (10th Cir. 2002) (en banc).

[12] *Knitter*, 758 F.3d at 1226 (quoting *Bristol*, 312 F.3d at 1218).

the EEOC test is the more appropriate test in this situation. Rather, the facts alleged in this case fall squarely into the context of the joint employer test, and that is the correct test here.

When assessing whether two entities are joint employers, courts weigh several factors to determine whether a company controls the terms and conditions of an employment relationship.[13] These factors include whether the company has the ability to: (1) terminate the employee; (2) promulgate work rules and issue assignments; (3) set conditions of employment, including compensation, benefits, and hours; (4) supervise and discipline the employee; and (5) control the employee's records, including payroll, insurance, taxes and other records.[14]

### 1. Ability to Terminate Employment

Plaintiff states in her Second Amended Complaint that St. Francis was the "sole decisionmaker" regarding whether Plaintiff would be terminated from her position.[15] St. Francis argues that this statement is conclusory, and Plaintiff has not asserted facts in her Complaint to support this conclusion. The Court agrees. Plaintiff does not assert sufficient facts to determine whether or not St. Francis had the power to terminate her. She was not terminated by St. Francis or by Conifer; rather, Conifer removed her from St. Francis and placed her elsewhere. Aside from those bare facts, there is nothing in the Second Amended Complaint that would support any conclusion about which entity was able to terminate her employment. Plaintiff has not plausibly pled that St. Francis had the ability to terminate her employment, and therefore has not satisfied the first prong of the joint employer test.

### 2. Ability to Promulgate Work Rules and Issue Assignments

---

[13] *Id.*

[14] *Id.* (quoting *Butterbaugh v. Chertoff*, 479 F. Supp. 2d 485, 491 (W.D. Pa. 2007)).

[15] Doc. 23 ¶ 26.

Plaintiff does sufficiently plead that St. Francis promulgated the rules she was required to follow as a patient advocate.  She was required to attend an employee orientation session, and was expected to follow all of the hospital's rules, including adhering to St. Francis's dress code.  She was required to wear her official, St. Francis–supplied photo identification badge while in the hospital.  St. Francis controlled the means of Plaintiff's work by providing her with an office and the necessary supplies for her position, including an email account.  Plaintiff was required to seek approval from St. Francis to work part-time for other employers.

Plaintiff also sufficiently alleges that St. Francis provided her with all of her work assignments.  On a daily basis, Plaintiff's supervisor, Ms. Shields, provided her with a patient census and instructions about which patients she needed to meet each day.  Ms. Shields also gave Plaintiff new assignments and changed Plaintiff's duties, requiring her to visit certain patients she had not been required to visit previously.

### 3. Ability to Set Conditions of Employment

Plaintiff's Second Amended Complaint also plausibly alleges that St. Francis set her conditions of employment.  She alleges that St. Francis controlled her hours and that her department was instructed at a weekly meeting that they had to work at least 40 hours per week.  She was also required by her supervisor, Ms. Shields, to attend trainings through St. Francis.  St. Francis also controlled Plaintiff's office space, email account, and supplies, and it relocated her office during the course of her time there.

Plaintiff makes no allegations about whether St. Francis controlled her compensation or benefits.  Nonetheless, the allegations in her Second Amended Complaint are sufficient to plausibly allege that St. Francis had the ability to set Plaintiff's conditions of employment.

### 4. Ability to Supervise and Discipline the Employee

Plaintiff sufficiently alleges that St. Francis had the ability to supervise and discipline her. She alleges that Ms. Shields appraised her performance on a weekly basis, and on one occasion, Ms. Shields filed a St. Francis disciplinary form against Plaintiff for a violation of hospital policy. These allegations, accepted to be true, are sufficient to nudge Plaintiff's claim over the line of plausibility.[16]

### 5. Ability to Control Employee Records

Plaintiff does not make any claims about employee records in her Second Amended Complaint. This factor therefore weighs against a finding of joint employment.

On balance, although the Court recognizes that Plaintiff has not sufficiently alleged that St. Francis had the ability to terminate her employment or control her employee records, she has plausibly stated a claim that St. Francis and Conifer were joint employers based on the other factors laid out in *Knitter*. The Court acknowledges the great weight given by the Tenth Circuit to the first *Knitter* factor, but "the ability to terminate may not be the sole factor courts should consider under the joint employment test."[17] Plaintiff has pled numerous other facts that lend significant weight to her allegation that St. Francis was her employer. At this early stage of the litigation, without a developed factual record, the Court finds that Plaintiff's allegations are sufficient to plausibly allege that St. Francis and Conifer were her joint employers. Accordingly, the Court denies Defendant's Motion to Dismiss as to Count One of Plaintiff's Second Amended Complaint.

### b. Retaliation Claims

---

[16] *See Khalik v. United Air Lines,* 671 F.3d 1188, 1190 (10th Cir. 2012).

[17] *See Knitter,* 758 F.3d at 1228; *see also Byorick v. CAS, Inc.*, No. 14-CV-2200-WJM-KMT, 2015 WL 4042041, at *4 (D. Colo. July 2, 2015).

Plaintiff claims in Count Two of the Second Amended Complaint that after she complained to Conifer and St. Francis of the race discrimination and harassment she was experiencing, St. Francis retaliated against her in violation of Title VII and § 1981.

The Tenth Circuit recognizes three elements for a retaliation claim under Title VII: (1) the plaintiff must have engaged in protected opposition to discrimination; (2) the plaintiff suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action.[18]  Plaintiff alleges that she reported the discrimination she was facing both to Conifer and to St. Francis.  She alleges that Conifer sent a human resources employee to visit St. Francis in response to her written complaint to Conifer.  She also alleges that St. Francis ignored and dismissed her complaints of racial discrimination without an investigation.  These allegations are sufficient to fulfill the first element of the analysis for a retaliation claim.

Plaintiff fails to allege facts sufficient to fulfill the second or third elements of the analysis, however.  Plaintiff alleges no adverse employment action.  The facts she asserts to support her retaliation claim lend support to the underlying claim of race discrimination, but they do not amount to retaliation.  She reiterates the racial slurs that were directed towards her by other employees, and again states that her co-workers were disrespectful towards her in numerous ways because of her race.  She does not, however, allege that St. Francis terminated her employment or asked that she be removed from her position.  She does not allege that she was given less desirable work assignments.  The only claim she makes that could be considered an adverse employment action is her statement that she was constructively discharged, but she alleges no facts to support that conclusory statement.  She also concludes that there is a causal

---

[18] *O'Neal v. Ferguson Constr. Co.,* 237 F.3d 1248, 1252 (10th Cir. 2001); *Petersen v. Utah Dep't of Corrs.*, 301 F.3d 1182, 1188 (10th Cir. 2002).

9

connection between her complaints about race discrimination and adverse employment actions, but again, she offers no factual support for that conclusion.

In the absence of any factual allegations to support Plaintiff's claim of retaliation, the Court finds that Count Two of her Second Amended Complaint must be dismissed.

### c. Interference with Contractual Relations Claim

Plaintiff similarly fails to sufficiently plead that St. Francis's actions interfered with contractual relations in violation of § 1981. She alleges that she was "entitled to enjoy the privileges and benefits of her employment with Conifer," and St. Francis intentionally interfered with that right.[19] She alleges that the discrimination and harassment she faced by her co-workers at St. Francis was so severe that Conifer had to remove her from her position at St. Francis. These allegations are the basis for her claim that St. Francis intentionally interfered with her employment with Conifer, and she claims that St. Francis acted with malice or reckless indifference to her federally protected rights.

In order to state a claim for interference with contractual relations in violation of § 1981, Plaintiff must show that (1) she is a member of a protected class; (2) Defendant had the intent to discriminate on the basis of race; and (3) the discrimination interfered with a protected activity as defined in § 1981—here, the right to make and enforce contracts.[20] Section 1981 "offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship."[21] "Any claim brought under §

---

[19] Doc. 23 ¶¶ 83-84, 86.

[20] *Shawl v. Dillard's, Inc.*, 17 F. App'x 908, 911 (10th Cir. 2001); *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1102 (10th Cir. 2001).

[21] *Muller v. Islands at Rio Rancho Homeowners Ass'n*, 564 F. App'x 411, 414 (10th Cir. 2014) (quoting *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006)).

1981, therefore, must initially identify an impaired contractual relationship[.]"[22] This type of claim thus requires the actual loss of a contract interest.[23]

There is nothing in Plaintiff's Second Amended Complaint to suggest that she had any kind of contract, either with Conifer or with St. Francis. Neither does she allege that she was in the process of negotiating a contract with either entity. She claims, in a conclusory statement, that she had a right to enjoy the privileges and benefits of her contractual relationship with Conifer, but she never states in her Second Amended Complaint that she had an employment contract with Conifer or with St. Francis. Furthermore, Plaintiff does not allege that she suffered any loss of a contractual interest. According to her Second Amended Complaint, she continued to work for Conifer at a different placement after she was removed from St. Francis. Plaintiff's relationship with Conifer—whether contractual or not—was not harmed at all, according to her own pleadings. None of the allegations in her Second Amended Complaint suggest that her ability to enjoy her employment with Conifer depended in any way on her placement at St. Francis.

Plaintiff fails to plausibly allege a contractual relationship with either Conifer or St. Francis, and she also fails to allege any harm to her employment with Conifer. Without satisfying those elements, Plaintiff cannot state a claim for interference with contractual relations in violation of § 1981. The Court accordingly dismisses without prejudice Count Three of Plaintiff's Second Amended Complaint.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion to Dismiss (Doc. 24) is DENIED as to Count One and GRANTED as to Counts Two and Three of

---

[22] *Id.* (quoting *Domino's Pizza, Inc.*, 546 U.S. at 476).

[23] *Hampton*, 247 F.3d at 1101; *Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1267 (10th Cir. 1989).

Plaintiff's Second Amended Complaint. The Court dismisses Counts Two and Three without prejudice.

**IT IS SO ORDERED.**

**Dated: March 30, 2016**                         s/ Julie A. Robinson
                                                  **United States District Judge**